Paul HAARHUIS, et al.,
Respondents/Appellants,

v.

KUNNAN ENTERPRISES, LTD., Debtor
and Petitioners/Appellees.

Civ.A. No. 97–2103(TPJ).

United States District Court,
District of Columbia.

Aug. 5, 1998.

John W. Karr, Washington, DC, for appellants.

Sharon L. Babbin, Hillyer & Irwin, Washington, DC, for appellees.

### MEMORANDUM AND ORDER

JACKSON, District Judge.

This is an appeal pursuant to 28 U.S.C. § 158 from the United States Bankruptcy Court for the District of Columbia of a final judgment entered on August 12, 1997, staying indefinitely a pending civil action for breach of contract in the U.S. District Court for the District of Columbia. Appellants (respondents below) are nine professional tennis players (hereinafter collectively "Haarhuis") who claim to have product-endorsement contracts with Kunnan Enterprises, Ltd. ("Kunnan"), a Taiwanese manufacturer of sports equipment. Appellees (petitioners below) are three Taiwanese citizens who are court-appointed "reorganizers" of Kunnan, which has been undergoing reorganization since February, 1996, in the Taichung District Court, Taiwan, R.O.C. (on Taiwan), pursuant to Taiwanese insolvency laws.

In October, 1995, Haarhuis and his co-respondents filed a civil action for damages

for breach of contract against Kunnan alleging a failure to pay royalties due for their product promotion activities on Kunnan's behalf. That civil action (Civ. No. 95–1967) was pending in this Court, with several jurisdictional issues (including service of process) still unresolved, on April 7, 1997, when the appellee-reorganizers filed a "Petition Commencing Case Ancillary to a Foreign Proceeding" pursuant to 11 U.S.C. § 304 to enjoin its further prosecution in this Court and enable all claims against Kunnan to be decided in the reorganization proceedings in Taiwan.

Following a one-day trial on August 5, 1997, at which the only witness was Professor Hung-dah Chiu of the University of Maryland School of Law, who testified as an expert witness for Kunnan, the bankruptcy court found in favor of the petitioners, i.e., for Kunnan, and entered the judgment from which this appeal is taken.

## I.

▆▆▆ Section 304(a) provides that a case ancillary to a "foreign [insolvency] proceeding"[1] May be commenced by the filing with a U.S. bankruptcy court of a petition by a "foreign representative."[2] When a foreign proceeding is ongoing (i.e., a proceeding in the nature of those contemplated by U.S. bankruptcy laws), § 304 allows the foreign representative to petition a United States bankruptcy court to, *inter alia,* "enjoin the commencement or continuation of any action against a debtor with respect to property involved in such foreign proceeding." 11 U.S.C. § 304(b)(1)(A)(i). The purpose is to enable all claims against a foreign debtor to be handled in the same forum, if the foreign forum meets certain criteria, in much the same fashion as they are adjudicated for wholly domestic U.S. debtors.[3]

Haarhuis contends, however, that the purpose of § 304 was simply to enable "foreign bankrupts to prevent piecemeal distribution of assets in this country by filing ancillary proceedings in domestic bankruptcy courts." Appellant's Br. at 7 (quoting *Victrix S.S. Co. v. Salen Dry Cargo A.B.,* 825 F.2d 709, 714 (2d Cir.1987)). Thus, Haarhuis argues, it follows that a United States bankruptcy court has no jurisdiction over a § 304 petition if the foreign debtor has no property (or at least a "business presence") in the United States.

Kunnan has always maintained, and Haarhuis does not dispute at the moment, that Kunnan has neither property nor a "presence" in the United States.

Haarhuis calls attention to the entire body of decisional law under § 304 since it was added to the Bankruptcy Code in 1978, noting that it apparently contains no case in which a U.S. bankruptcy court has taken jurisdiction of a § 304 petition in the absence of some property belonging to the foreign debtor in the United States. But he also cites no case law explicitly stating that the presence of debtor property in the United States is a prerequisite for jurisdiction under § 304.

Before the bankruptcy court Haarhuis argued that the Bankruptcy Code's definition of "debtor"—"only a person that resides or has a domicile, a place of business, or property in the United States, or a municipality, may be a debtor under this title," 11 U.S.C. § 109(a)—also defined the term "debtor" as used in § 304. However, the Eleventh Circuit, in *In re Goerg,* explicitly rejected the contention, concluding:

1. A foreign proceeding is defined as a:

   proceeding, whether judicial or administrative and whether or not under bankruptcy law, in a foreign country in which the debtor's domicile, residence, principal place of business, or principal assets were located at the commencement of such proceeding, for the purpose of liquidating an estate, adjusting debts by composition, extension, or discharge, or effecting a reorganization.
   
   11 U.S.C. § 101(23).

2. A foreign representative is a "duly selected trustee, administrator, or other representative of an estate in a foreign proceeding." 11 U.S.C. § 101(24).

3. A § 304 proceeding, being ancillary, does not enjoy the benefit of the 11 U.S.C. § 362 automatic stay occasioned by the filing of an initial domestic petition in a U.S. bankruptcy court. *See, e.g., In re Goerg,* 844 F.2d 1562, 1568 (11th Cir.1988), *cert. denied,* 488 U.S. 1034, 109 S.Ct. 850, 102 L.Ed.2d 981 (1989).

the debtor in a section 304 proceeding need not qualify as a "debtor" under the Code's definition of that term. Rather, the debtor need only be properly subject, under applicable foreign law, to a proceeding commenced "for the purpose of liquidating an estate, adjusting debts by composition, extension, or discharge, or effecting a reorganization."

*In re Goerg,* 844 F.2d 1562, 1568 (11th Cir. 1988) (quoting 11 U.S.C. § 101(23)), *cert. denied,* 488 U.S. 1034, 109 S.Ct. 850, 102 L.Ed.2d 981 (1989); *see also In re Brierley,* 145 B.R. 151, 159 (Bankr.S.D.N.Y.1992).

Haarhuis also quotes from § 304's legislative history, the only arguably pertinent provision of which is a portion of S.Rep. No. 95–989, at 35 (1978), observing that a foreign representative "may" commence an ancillary § 304 proceeding "to administer assets located in this country, to prevent dismemberment by local creditors of assets located here, *or for other appropriate relief.*" 1978 U.S.C.C.A.N. 5787, 5821 (emphasis supplied). Nowhere does the legislative history suggest that the presence of debtor-owned property in the United States which might be vulnerable to domestic process was a *sine qua non* of bankruptcy court jurisdiction under § 304.

In fact, to hold the presence of property in the United States to be a jurisdictional prerequisite under § 304 would diminish much of its usefulness as an adjunct to foreign insolvency proceedings. Foreign representatives might have no interest in protecting a foreign debtor's U.S. assets of negligible value, yet be vitally concerned with defending the corpus of a foreign debtor's estate abroad against a U.S. judgment that would likely be given recognition in the foreign proceeding.

■ In short, this Court holds that a § 304 petition is not to be considered solely as a proceeding in the nature of an application for *in rem* or *quasi-in rem* relief and affecting only property in the United States.

The bankruptcy court properly concluded that it possessed jurisdiction of Kunnan's § 304 petition despite the absence of U.S. assets accessible to creditors by domestic process alone.

## II.

When determining whether or not to grant relief on a § 304 petition (*e.g.,* to enjoin a domestic lawsuit), the bankruptcy court is instructed by § 304(c) to be "guided by what will best assure an economical and expeditious administration of such estate," consistent with the following factors:

(1) just treatment of all holders of claims against or interests in such estate;

(2) protection of claim holders in the United States against prejudice and inconvenience in the processing of claims in such foreign proceeding;

(3) prevention of preferential or fraudulent dispositions of property of such estate;

(4) distribution of proceeds of such estate substantially in accordance with the order prescribed by this title;

(5) comity;[4] and

(6) if appropriate, the provision of an opportunity for a fresh start for the individual that such foreign proceeding concerns.[5]

11 U.S.C. § 304(c).

[4] These factors are not requirements but are, rather, guideline criteria by which the bankruptcy court should measure the extent to which foreign law is compatible with U.S. practice. *See In re Kojima,* 177 B.R. 696, 701 (Bankr.D.Colo.1995). Observing that "[t]he equitable and orderly distribution of a debtor's property requires assembling all claims against the limited assets in a single proceeding; if all creditors could not be bound, a plan of reorganization would fail," the Second Circuit read the provisions

---

**4.** Comity is defined as: "the recognition which one nation allows within its territory to the legislative, executive, or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protection of its laws." *Hilton v. Guyot,* 159 U.S. 113, 164, 16 S.Ct. 139, 40 L.Ed. 95 (1895).

**5.** Kunnan argues, and Haarhuis does not dispute, that factor (6) applies only in the case of an individual debtor and is inapplicable here. *See In re Gercke,* 122 B.R. 621, 634 (Bankr.D.D.C. 1991).

of § 304 to permit, "federal courts [to] recognize foreign bankruptcy proceedings provided the foreign laws comport with due process and fairly treat claims of local creditors." *Victrix S.S. Co. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 714 (2d Cir.1987) (citations omitted).

■ The bankruptcy court concluded, on the basis of the expert testimony to which Haarhuis objected (see *infra*), that Taiwanese insolvency law satisfied the criteria prescribed by § 304(c). Specifically, it found: (1) there is no evidence of unjust treatment of claims under Taiwanese law; (2) there was no showing that Taiwanese law discriminates against foreign nationals; (3) Taiwanese law does protect against fraudulent dispositions of property of the estate; (4) priority is accorded to claims similar to those accorded priority in the United States; and (5) it is in the interest of the United States as a matter of comity to recognize the propriety of the Taiwanese reorganization proceedings. *See* Transcript of August 5, 1997 before the United States Bankruptcy Court, at 76–80 (hereinafter "Tr."). The objective being to assure an economical and expeditious administration of the estate, the bankruptcy court concluded that "[t]he claims adjudication proceeding can take place more efficiently in [Taiwan] where all claims will be centralized." Tr. at 81.

Haarhuis' only evidence to the contrary relates to the factor of comity. Proffering an English translation of what purports to be Chapter I, Article 4, of Taiwan's bankruptcy law, Haarhuis contends that Taiwan explicitly rejects the principle of comity:

> A composition reached abroad or a bankruptcy adjudicated abroad shall not take effect in respect to the properties which the debtor or bankrupt possesses within the domain of [Taiwan].

*Commercial, Business and Trade Laws: Taiwan* (Bankruptcy) (CCH) (Sept.1983).

Haarhuis understands Article 4 as, in effect, a statutory mandate to Taiwanese courts to ignore, if not to repudiate, the results of any non-Taiwanese adjudication of rights to a debtor's property located in Taiwan. Neither the bankruptcy court nor this Court reads Article 4 (if it is what it purports to be) so dogmatically. Read fairly and for its apparent purpose, it appears entirely consistent with the treatment a U.S. court would accord a Taiwanese judgment in a similar context; specifically, the court is not bound by a foreign judgment respecting a debtor's property found in Taiwan, but the court may, however, accord it such recognition as it deserves as a matter of comity.[6]

### III.

Although offering no evidence himself as to Taiwanese law (other than Article 4), either in the form of statutory text or testimony, Haarhuis objects to the bankruptcy court's admission into evidence of translations of purported excerpts of Taiwanese insolvency law authenticated by Dr. Chiu, and the expert's testimony as to their significance in determining whether the § 304(c) criteria were met as a predicate for injunctive relief.

■ Kunnan's expert, Dr. Hung-dah Chiu, is a professor at the University of Maryland at Baltimore with degrees from National Taiwan University and Harvard University (L.L.M., S.J.D.). He has written numerous articles on Taiwanese law as well as the law of the People's Republic of China. He is the president of the Chinese Society of International Law (Taiwanese branch of the International Law Association) and editor-in-chief of the "Chinese Yearbook of International Law and Affairs." Haarhuis objects to Dr. Chiu's qualification as an expert witness because Dr. Chiu admits to having virtually no experience in bankruptcy law as such.

The bankruptcy court certified Dr. Chiu as an expert to testify about "international aspects of the laws of the Republic of China and Taiwan," Tr. at 31, and later qualified him as an expert to testify about "Chinese law," Tr. at 37, but he did not certify Dr. Chiu specifically as an expert in "Chinese (or Taiwanese) bankruptcy law."

---

**6.** The uncontradicted testimony of Kunnan's expert asserts that Article 4 is inapplicable to the proceeding in Taichung District Court in any event, which is a "reorganization," whereas Article 4 only applies to "bankruptcies." Tr. at 35, 56–57.

Expert testimony is generally admissible whenever it "will assist the trier of fact to understand the evidence or to determine a fact in issue ...," as it clearly assisted the bankruptcy court here. Fed.R.Evid. 702. "[A] trial judge has broad discretion in the matter of the admission or exclusion of expert evidence, and his action is to be sustained unless manifestly erroneous." *Salem v. United States Lines Co.*, 370 U.S. 31, 35, 82 S.Ct. 1119, 8 L.Ed.2d 313 (1962) (citing *Spring Co. v. Edgar*, 99 U.S. 645, 658, 25 L.Ed. 487 (1878)). Given Dr. Chiu's background and education, the Court concludes that the qualification of Dr. Chiu as an expert on international law and on Chinese law was not "manifestly erroneous."

■ A separate question is whether Dr. Chiu's testimony was properly deemed probative on the § 304(c) issue. Dr. Chiu testified to seven essential points:

(1) Unless the law explicitly states otherwise, foreigners and Chinese (Taiwanese) are treated the same, including in reorganization proceedings. *See* Tr. at 42.

(2) The Friendship, Commerce, and Navigation treaty between the United States and Taiwan provides for "national treatment" of United States citizens in courts of justice and administrative tribunals in Taiwan. *See* Tr. at 37–38, 46.

(3) Taiwanese law protects against fraudulent dispositions. *See* Tr. at 42–44.

(4) Distribution of proceeds of a reorganized estate would be substantially similar to such distribution in the United States. *See* Tr. at 44–.45.

(5) The Taiwanese company law, which contains the reorganization provisions, incorporates or is based on United States law and Japanese law. *See* Tr. at 15, 37.

(6) Article 4 of the Taiwanese bankruptcy law regarding comity does not apply in a reorganization proceeding. *See* Tr. at 35, 56–57.

(7) Exhibits 5, 6, and 7 to the § 304 petition are excerpts from an English translation of the laws of Taiwan

deemed authentic in the field. *See* Tr. at 41–42, 61–62.

Dr. Chiu's testimony on these points is very general, but Haarhuis offers no evidence to contradict Dr. Chiu; rather, he simply objects to Dr. Chiu's qualifications to speak to the issue at all. This Court concludes that the testimony is well within the ambit of his demonstrated expertise, and the bankruptcy court committed no abuse of discretion not only in admitting it but in giving it probative weight as well.

### IV.

■ Haarhuis contends that Kunnan Exhibits 5, 6, and 7 were inadmissible under Fed.R.Civ.P. 44(a)(2) and Fed.R.Evid. 902 because they are unauthenticated foreign documents. Kunnan Exhibits 5, 6, and 7 are excerpts of Taiwanese law. Haarhuis states that the bankruptcy court acknowledged that the exhibits did not meet the tests, but the court admitted them anyway and relied on them. Haarhuis argues that this decision was plain error requiring reversal of the judgment. The Court disagrees.

Fed.R.Civ.P. 44.1 provides:

A party who intends to raise an issue concerning the law of a foreign country shall give notice by pleadings or other reasonable written notice. The court, in determining foreign law, may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination shall be treated as a ruling on a question of law.

Fed.R.Civ.P. 44.1.

Kunnan's § 304 petition asserts that the laws of Taiwan comport with due process, an allegation to which Haarhuis responded in its opposition, demonstrating that both sides had notice that the laws of Taiwan would be an issue in this case. Therefore, the bankruptcy court, under the broad language of Fed.R.Civ.P. 44.1, properly considered any relevant material to educate itself about Taiwanese law, whether or not it would be admissible under the Federal Rules of Evidence.

## V.

By separate orders entered on November 18, 1997, the bankruptcy court taxed costs and fees in favor of Kunnan and against Haarhuis in a total amount of $4,107.25. Haarhuis objects that the amount is excessive. Only two items require discussion.

 The bankruptcy court allowed Kunnan to recover $1,641.25 as the cost of commencing the service of process in the § 304 proceeding, in accordance with Fed.R.Civ.P. 4(f), upon the five Haarhuis respondents who were, at the time, to be found in locales as geographically dispersed as Belgium, Pakistan, Monaco, and Morocco. The cost averages to less than $400 per respondent, and none of it needed to have been incurred had Haarhuis and his colleagues promptly authorized their local counsel to accept service or enter an appearance for them in the District of Columbia. .

The bankruptcy court also ordered the payment of an expert witness fee of $1,584.70 to Dr. Chiu for a discovery deposition taken of him by counsel for Haarhuis in July, 1997, one month before trial. Dr. Chiu's hourly rate is $300, which the Court finds reasonable. The deposition took less than two hours, but the remainder of the fee is explained by the insistence of Haarhuis' counsel that Dr. Chiu be deposed in Washington, D.C. rather than at his own office in Baltimore, Maryland. Since Dr. Chiu devoted approximately three hours to travel between the cities, he is entitled to be paid portal-to-portal. *See Magee v. Paul Revere Life Ins. Co.*, 172 F.R.D. 627, 646 (E.D.N.Y. 1997). The bankruptcy court: did not abuse its discretion in awarding costs and fees as it did.

For the foregoing reasons, it is, this 5th day of August, 1998,

ORDERED that the final judgment of the bankruptcy court concluding Bankruptcy No. 97–630 and enjoining further proceedings against Kunnan Enterprises, Ltd., in Civil Action No. 95–1967 filed and entered August 12, 1997 is affirmed; and it is

FURTHER ORDERED that the orders of the bankruptcy court of November 18, 1997, awarding costs and an expert fee, are affirmed.