Opinion for the Court filed by
 
 Circuit Judge
 
 WALD.
 

 
 *1009
 
 WALD,
 
 Circuit Judge:
 

 Appellants are nine professional tennis players (collectively “Haarhuis”) who filed an action in the United States District Court for the District of Columbia claiming breach of contract against Kunnan Enterprises (“Kunnan”), a Taiwanese corporation. While that action was pending, appellees, reorganizers of Kunnan (“Reor-ganizers”) appointed by the Taichung District Court, Taiwan, Republic of China pursuant to Taiwanese insolvency laws, filed an action in the United States Bankruptcy Court for the District of Columbia requesting that the bankruptcy court enjoin further action against Kunnan on Haarhuis’ breach of contract claim. The Reorganizers sought this injunction under 11 U.S.C. § 304 (“§ 304”), which allows a representative of a foreign bankruptcy or reorganization to petition a United States bankruptcy court to,
 
 inter alia,
 
 “enjoin the commencement or continuation of any action against a debtor with respect to property involved in such foreign proceeding.” 11 U.S.C. § 304(b)(l)(A)(i). The Reorga-nizers’ expressed intent in filing the petition was to ensure that all claims against Kunnan would be decided in one forum, namely, the reorganization proceeding already underway in Taiwan.
 

 Haarhuis contested the Reorganizers’ petition and a trial was held before the bankruptcy court on August 5, 1997. As an initial jurisdictional matter, Haarhuis argued that the bankruptcy court lacked jurisdiction to hear the § 304 case because Kunnan owned no assets in the United States. The Reorganizers admitted that Kunnan owned no assets in the United States but denied that the presence of such assets was a necessary condition to jurisdiction under § 304. The bankruptcy court agreed with the Reorganizers that its jurisdiction did not turn on the presence or absence of foreign-owned assets in the United States, and, after rejecting Haarhuis’ other arguments and objections,
 
 see
 
 below, enjoined the continuation of the pending breach of contract case. Haar-huis appealed the judgment of the bankruptcy court to the district court below and the district court affirmed, explicitly holding that § 304 did not require the presence of assets in the United States in order for a bankruptcy court to exercise jurisdiction thereunder.
 

 On appeal, Haarhuis repeats his basic argument that the bankruptcy court lacked jurisdiction because Kunnan owns no assets in the United States. We agree with Haarhuis that the question appears to be one of first impression; however, we ultimately agree with the Reorganizers (and the district and bankruptcy courts) that jurisdiction under § 304 does not require the presence of assets within the United States.
 

 Haarhuis also renews on appeal a panoply of other objections to the judgment of the bankruptcy court, all of which the district court rejected and in none of which we find merit. Accordingly, we affirm the judgment of the district court in its entirety-
 

 I. Background
 

 Kunnan is a Taiwanese corporation which manufactures sporting equipment. Both parties agree that Kunnan owns no assets in the United States. In April 1995, a creditor of Kunnan filed in a Taiwanese court for an involuntary reorganization of Kunnan under the laws of Taiwan. The reorganization was approved by the Taichung District Court in February 1996, and a schedule was filed for various reorganization activities. '
 

 In October 1995, Haarhuis filed a complaint in the United States District Court for the District of Columbia, alleging that Kunnan had signed endorsement contracts with the players and then simply failed to pay its contractual obligations. The complaint also alleged that the endorsement contracts contained a clause to the effect that the contracts would be construed in accordance with District of Columbia law and that any legal action with respect
 
 *1010
 
 thereto must be taken in the District of Columbia.
 

 In March 1996, Haarhuis received notice of the reorganization proceeding going on in Taiwan. In response, counsel for Haar-huis submitted a copy of the complaint filed in the breach of contract case to the administrator of the reorganization in Taiwan, specifically pointing out the amount, as listed in the complaint, allegedly owed to each tennis player.
 

 In February 1997, counsel for Kunnan appeared in the breach of contract case for the purpose of filing a motion to dismiss for lack of subject matter jurisdiction or, alternatively, for insufficient service of process. Haarhuis filed an opposition to Kunnan’s motion and a motion for leave to amend (to attempt to fix the jurisdictional problems alleged by Kunnan in its motions). . Kunnan opposed Haarhuis’ motion. In April 1997, before the district court had taken any action with respect to the parties’ motions, the Reorganizers filed a Petition Commencing Case Ancillary to Foreign Proceeding under 11 U.S.C. § 304 (“Petition”) in the United States Bankruptcy Court for the District of Columbia, seeking to enjoin further prosecution of the breach of contract case.
 

 The Reorganizers brought their § 304 Petition under § 304(b)(1)(A)® and (b)(3), which provide that a representative of a foreign bankruptcy proceeding may file a petition with a United States bankruptcy court which, if certain factors are met, may enjoin the commencement or continuation of an action against the debtor with respect to property involved in the foreign proceeding and/or may order other appropriate relief.
 

 Haarhuis argues, based on the uncontro-verted fact that Kunnan owns no assets in the United States, that the bankruptcy court lacked jurisdiction under § 304 to entertain the Reorganizers’ Petition. In support of this argument, Haarhuis relies on the legislative history of § 304 and on the fact that all of the cases relied upon by the Reorganizers assume the foreign debt- or has assets in the United States.
 

 In addition to his jurisdictional challenge, Haarhuis lodges a number of other objections to the judgment of the bankruptcy court, arguing that it erred in granting relief under § 304 because one of the factors governing a bankruptcy court’s determination of whether to grant relief under § 304- — comity—was not present in this case;
 
 [1]
 
 that its finding that the other factors listed in § 304 were met was not supported by competent or sufficient evidence; and that it erred in qualifying the Reorganizers’ witness, Dr. Hungdah Chiu, as an expert; in admitting into evidence uncertified foreign documents; in assessing costs against him; and in awarding an expert witness fee to Dr. Chiu.
 

 II. Discussion
 

 A.
 
 Jurisdiction Under Section SOJf.
 

 The question of whether a bankruptcy court has jurisdiction under § 304 where a foreign debtor owns no assets in the United States appears to be one of first impression. Certainly, there is no affirmative precedent holding that § 304 requires such assets,
 
 [2]
 
 but Haarhuis is cor
 
 *1011
 
 rect in noting that all of the cases relied upon by the Reorganizers dealt with petitions where assets in the United States were in fact involved. Haarhuis contends that the reason for this is that a bankruptcy court has no jurisdiction unless there are assets upon which it has authority to act. We can surmise an alternative explanation, namely, that foreign representatives are more likely to file § 304 petitions when the debtor has assets in the United States that are vulnerable to attachment than when a creditor can expect at most to obtain a judgment
 
 from a
 
 United States court which can only be satisfied abroad where the debtor’s assets are actually located.
 
 [3]
 

 Speculations on the cause of the missing precedents aside, we turn first to the language of the statute. 11 U.S.C. § 304 provides:
 

 (a) A case ancillary to a foreign proceeding is commenced by the filing with the bankruptcy court of a petition under this section by a foreign representative.
 

 (b) Subject to the provisions of subsection (c) of this section, if a party in interest does not timely controvert the petition, or after trial, the court may—
 

 (1) enjoin the commencement or continuation of—
 

 (A) any action against—
 

 (i) a debtor with respect to property involved in such foreign proceeding; or
 

 (ii) such property; or
 

 (B) the enforcement of any judgment against the debtor with respect to such property, or any act or the commencement or continuation of any judicial proceeding to create or en
 
 *1012
 
 force a lien against the property of such estate;
 

 (2) order the turnover of the property of such estate, or the proceeds of such property, to such foreign representative; or
 

 (3) order other appropriate relief.
 

 11 U.S.C. § 304(a), (b) (1994).
 

 As a practical matter, it does appear that §§ 304(b)(l)(A)(ii), (b)(1)(B), and (b)(2) must be read as necessitating assets under the jurisdiction of the United States. For example, § 304(b)(l)(A)(ii) provides that the bankruptcy court may enjoin the continuation of an action against the property involved in a foreign proceeding, and a United States court must actually have jurisdiction over property in order to entertain an
 
 in rem
 
 type suit against such property. Similarly, § 304(b)(1)(B) appears to contemplate assets in the United States because a United States court can only create or enforce a lien against property over which it has jurisdiction. Finally, § 304(b)(2) also appears to contemplate assets in the United States; again, a United States court cannot order the turnover (to the representative of the foreign reorganization proceeding) of property over which it has no jurisdiction.
 

 However, while §§ 304(b)(l)(A)(ii), (b)(1)(B), and (b)(2) seem to require the presence of assets in the United States, the Reorganizers did not bring their Petition under those subsections. Instead, they brought their Petition under §§ 304(b)(l)(A)(i) and (b)(3). Section 304(b)(l)(A)(i) provides for the enjoinment of an action against a
 
 debtor (ie.,
 
 not property) with respect to property involved in a foreign bankruptcy or reorganization proceeding
 
 (ie.,
 
 not property necessarily located in the United States but rather property tied up in the foreign bankruptcy or reorganization proceeding). In fact, § 304(b)(1)(A)® describes precisely the case we have here. The property involved in the reorganization proceeding with respect to Kunnan is in Taiwan (or maybe elsewhere as well, but certainly not in the United States); nevertheless, Haar-huis sued the debtor (Kunnan) here with respect to property located abroad.
 

 The Reorganizers also brought their Petition under § 304(b)(3). The language of § 304(b)(3), providing that the bankruptcy court can order other appropriate relief, does not suggest the necessity of the presence of assets in the United States and § 304(b)(3) has been read simply as further indication of the broad discretion of bankruptcy courts under § 304 “to mold appropriate relief ‘in near blank check fashion.’ ” 3 Collier Bankruptcy Manual ¶ 304.07 (1998) (quoting
 
 In re Culmer,
 
 25 B.R. 621, 624 (Bankr.S.D.N.Y.1982)).
 
 [4]
 
 In sum, the plain language of § 304 compels the conclusion that a bankruptcy court has jurisdiction under §§ 304(b)(1)(A)® and (b)(3), even where no assets are present in the United States.
 

 Beyond the statutory text, however, Haarhuis argues that the legislative history unambiguously indicates a congressional intent that all § 304 cases be limited to those involving assets in the United States. The legislative history to which Haarhuis refers does include the following:
 

 This section [304] governs cases filed in the bankruptcy courts that are ancillary to foreign proceedings. That is, where a foreign bankruptcy case is pending concerning a particular debtor and that debtor has assets in this country, the foreign representative may file a petition under this section, which does not commence a full bankruptcy case, in order to administer assets located in this country, to prevent dismemberment by local creditors of assets located here, or for other appropriate relief.
 

 
 *1013
 
 S.Rep. No. 95-989, at 35 (1978),
 
 reprinted in
 
 1978 U.S.C.C.A.N 5787, 5821. It would be disingenuous to deny that the foregoing language, read in isolation, supports an inference that local assets will usually be involved in § 304 cases. However, as the district court below correctly pointed out, “[n]owhere does the legislative history suggest that the presence of debtor-owned property in the United States which might be vulnerable to domestic process was a
 
 sine qua non
 
 of bankruptcy court jurisdiction under § 304.”
 
 Haarhuis v. Kunnan Enterprises, Ltd.,
 
 223 B.R. 252, 254 (D.D.C.1998). Congress may indeed have presumed that the usual § 304 case would involve assets in the United States, and that presumption seems to have been borne out by the dearth of § 304 cases without such assets. Nevertheless, all by itself, this one largely descriptive congressional statement does not indicate a clear enough normative intent to limit § 304 cases to those involving U.S. assets to override the statutory text itself.
 
 See Garcia v. United States,
 
 469 U.S. 70, 75, 105 S.Ct. 479, 83 L.Ed.2d 472 (1984) (asserting that “only the most extraordinary showing of contrary intentions from [the legislative history] would justify a limitation on the ‘plain meaning’ of the statutory language”).
 

 Finally, Haarhuis points to a number of decisions that he claims implicitly if not explicitly assume that § 304 only applies when a debtor has assets in the United States. These decisions often track the language of the Senate Report just discussed with respect to the purpose of § 304.
 
 See, e.g., Victrix Steamship Co. v. Salen Dry Cargo, A.B.,
 
 825 F.2d 709, 714 (2d Cir.1987) (noting that congressional purpose behind § 304 was to allow “foreign bankrupts to prevent piecemeal distribution of assets in this county by filing ancillary proceedings in domestic bankruptcy courts”). However, when push comes to shove, none of the cases addressed the precise issue here; namely, does § 304
 
 require
 
 the presence of assets in the United States in order for jurisdiction to lie. We now answer this question in the negative and accordingly hold that the bankruptcy court below had jurisdiction to entertain the Reorganizers’ petition.
 

 B.
 
 Comity
 

 Haarhuis also argues that one of the factors governing a bankruptcy court’s decision to grant relief under § 304, comity, was not met in this case. Section 304(c) provides that, in determining whether to grant relief under subsection (b), “the court shall be guided by what will best assure an economical and expeditious administration of such estate, consistent with — ”
 

 (1) just treatment of all holders of claims against or interests in such estate;
 

 (2) protection of claim holders in the United States against prejudice and inconvenience in the processing of claims in such foreign proceeding;
 

 (3) prevention of preferential or fraudulent dispositions of property of such estate;
 

 (4) distribution of proceeds of such estate substantially in accordance with the order prescribed by this title;
 

 (5) comity
 

 11 U.S.C. § 304(c).
 
 [5]
 

 “Comity is a doctrine that encourages deference to foreign laws and judgments if macro systemic concepts, such as due process and impartiality, are present in the foreign proceeding.” 3 Collier Bankruptcy Manual ¶ 304.08(5)(b). Haarhuis argues against the existence of comity based on a provision of Taiwan’s bankruptcy law that it submitted to the bankruptcy court. This provision states that a bankruptcy adjudicated outside of the Republic of China would not take effect with respect to properties that the debtor possessed within the Republic of China. The Reorganizers’ ex
 
 *1014
 
 pert witness, Dr. Chiu, however, testified that the provision relied upon by Haarhuis would not apply to Kunnan’s case because Kunnan was involved in a reorganization and the provision applied to bankruptcies only. In other words, Dr. Chiu testified that, even were the provision read as evidence against the existence of comity, the provision has no applicability to the case involving Kunnan. Haarhuis provided no expert witness of his own to rebut the testimony of Dr. Chiu.
 

 Moreover, Dr. Chiu also affirmatively testified that Taiwanese reorganization law was based on United States and Japanese law and testified to the existence of a Friendship Treaty between the United States and China. From this testimony, the bankruptcy court found that the Taiwanese provisions governing the reorganization would not be repugnant to provisions of United States reorganization law and that Haarhuis would not be treated unfairly, vis-a-vis local creditors, in the reorganization proceeding in Taiwan. The bankruptcy court was entitled to rely on the testimony of Dr. Chiu to find that comity existed, and, given the broad discretion granted to bankruptcy courts under § 304, we cannot say that the bankruptcy court here erred in so finding.
 
 [6]
 

 C.
 
 Sufficient and Competent Evidence to Support the Other Factors
 

 Haarhuis also argues more generally that the other factors of § 304 were not satisfied because the bankruptcy court relied solely on the testimony of Dr. Chiu and that his testimony was neither competent nor sufficient to support a finding that these factors had been met. The bankruptcy court found that there was no evidence of unjust treatment of claims under Taiwanese law; that there was no showing that Taiwanese law discriminates against foreign nationals; that Taiwanese law protects against fraudulent dispositions of property; that priority is generally accorded to claims similar to those accorded priority in the United States; and that it was in the interest of the United States with respect to comity concerns to recognize the propriety of the reorganization proceeding underway in Taiwan. The bankruptcy court based these findings on a text submitted by the Reorganizers pertaining to the major laws of Taiwan; Dr. Chiu’s testimony that the text was an accurate translation from the Chinese and was deemed authoritative in the field; and Dr. Chiu’s substantive testimony with respect to the laws of Taiwan, their relation to United States laws, and their applicability to the reorganization proceeding involving Taiwan. We find this evidence to be both competent and sufficient to sustain the bankruptcy court’s finding that the § 304(c) factors had been met.
 

 D.
 
 Qualification of Dr. Chiu
 

 Haarhuis next objects to the qualification of Dr. Chiu as an expert witness. This objection is based on Dr. Chiu’s concession that he was not an expert with respect to the specialized field of bankruptcy law. Dr. Chiu is, however, an expert on Chinese and Taiwanese law and their relation to United States law. Dr. Chiu holds degrees from National Taiwan University and Harvard Law School. He is a professor of international and Chinese law at the University of Maryland, has written numerous books and articles on Chinese law, and is currently president of the Chinese Society of International Law. We find that Dr. Chiu was eminently quali
 
 *1015
 
 fied to testify and, in any event, the decision whether to qualify an expert witness is within the broad latitude of the trial court and is reviewed for abuse of discretion.
 
 See Kumho Tire Co. v. Carmichael,
 
 — U.S. -, 119 S.Ct. 1167, 1176, 143 L.Ed.2d 238 (1999). The bankruptcy court did not err in qualifying Dr. Chiu.
 

 E.Admission of Foreign Documents
 

 Haarhuis also objects to the admission into evidence of documents consisting of notices and decisions of the Taichung District Court involving the reorganization of Kunnan because these documents lacked final certification. The bankruptcy court did admit the documents without final certification, but Federal Rule of Civil Procedure 44(a)(2) allows for such admission under certain circumstances, including (according to the Advisory Committee Notes), as is true here, where there is no United States consular service in the foreign country to provide such certification. Rule 44(a)(2) provides that if reasonable opportunity has been given to all parties to investigate the authenticity and accuracy of foreign documents, a court may, for good cause shown, admit an attested copy of the foreign document without final certification. The Advisory Committee Note to 44(a)(2) says:
 

 [I]t is recognized that in some situations it may be difficult or even impossible to satisfy the basic requirements of the rule. There may be no United States consul in a particular foreign country. ... Therefore, the final sentence of subdivision (a)(2) provides the court with discretion to admit an attested copy of a record without a final certification.
 

 The bankruptcy court found that Haar-huis had a reasonable opportunity to examine the authenticity and accuracy of the foreign documents and that because there was no consular service in Taiwan, the documents could be admitted into evidence without final certification. The bankruptcy court did not abuse its discretion under Rule 44(a)(2) in so doing.
 

 F.
 
 Award of Costs
 

 Haarhuis objects to the costs that were assessed against him by the bankruptcy court. The costs awarded totaled $2,522.55 and included costs for clerk’s fees, service of summons and complaint, and copying. While acknowledging that Federal Rule of Civil Procedure 54(d)
 
 [7]
 
 provides for the award of costs against the losing party as a matter of course, Haarhuis nevertheless objects to the award of costs, based on what seems at base to be an argument that the Reorganizers ought never to have brought the case in the first place. This argument goes nowhere. The award of costs was proper.
 

 G.
 
 Expert Witness Fee
 

 Finally, Haarhuis objects to the award of an expert witness fee to Dr. Chiu. The bankruptcy court awarded Dr. Chiu $1,584.70 under Federal Rule of Civil Procedure 26(b)(4)(C) for the time that Dr. Chiu spent in responding to Haarhuis’ discovery request, specifically, the time that Dr. Chiu spent traveling to be deposed by Haarhuis’ counsel, the deposition itself, and the time spent returning from the deposition. Haarhuis argues that under 28 U.S.C. § 1821(b), Dr. Chiu was only entitled to a fee of $40. 28 U.S.C. § 1821(b) does in fact limit witness fees to $40 per day. However, the fee here was awarded under Rule 26(b)(4)(C), which applies where, as here, an expert witness spends time responding to the opposing party’s discovery request.
 
 See Marine Petroleum Co. v. Champlin Petroleum Co.,
 
 641 F.2d 984, 988-89 (D.C.Cir.1979) (“Discovery into facts possessed and opinions entertained by an adversary’s expert is now regulated by the Federal Rules of
 
 *1016
 
 Civil Procedure. The governing principles are set forth in Rule 26(b)(4).... ”). Rule 26(b)(4)(C) provides that “[ujnless manifest justice would result, (i) the court shall require that the party seeking discovery pay the expert a reasonable fee for time spent in responding to discovery under this subdivision.... ” The bankruptcy court found that Dr. Chiu’s hourly fee of $300 per hour was reasonable and that he deserved to be paid portal-to-portal. We cannot say that the bankruptcy court abused its discretion in so finding.
 

 III. Conclusion
 

 For the foregoing reasons, the judgment of the district court is affirmed.
 

 So ordered.
 

 [1]
 

 . The Supreme Court has defined "comity” as "the recognition which one nation allows within its territory to the legislative, executive, or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protection of its laws.”
 
 Hilton v. Guyot,
 
 159 U.S. 113, 164, 16 S.Ct. 139, 40 L.Ed. 95 (1895).
 

 [2]
 

 . While the statement that no published opinion has explicitly held that assets in the United States are required for jurisdiction under § 304 is technically correct, we note an unpublished case, not cited by the parties, where a court held without discussion that § 304 was irrelevant in a case where the debtor owned no assets in the United States. See
 
 United Kingdom Mutual S.S. Assurance Ass'n, Ltd. v. Continental Maritime of San Francisco, Inc.,
 
 No. C-91-2798, 1992 WL 486937, at *7 (N.D. Cal. Aug. 31, 1992) ("Section[] 304 ... appear[s] to be irrelevant, however, since it pertains to a foreign debtor with assets in the United States.”).
 
 See also
 
 Evan D. Flaschen & Brian N. Watkins,
 
 Current Developments Concerning United States Treatment of Interna
 
 
 *1011
 

 tional Insolvencies, in
 
 16th
 
 Annual Current Developments in Bankruptcy and Reorganization,
 
 at 523 (PLI Commercial Law & Practice Course Handbooks Series No. A4-4453 1994) (noting the
 
 Continental Maritime
 
 court's holding that § 304 is irrelevant "when a debtor's request does not influence assets located in the United States”).
 

 Additionally, two bankruptcy courts,
 
 In re Brierley, 145 B.R. 151, 169
 
 (Bankr.S.D.N.Y.1992) and
 
 In re Gee,
 
 53 B.R. 891, 897-98 (Bankr.S.D.N.Y.1985), did discuss the presence-of-assets issue but in the context of whether assets in the United States were required when a party seeks discovery under § 304. The courts concluded that such assets were not required.
 

 Finally, in
 
 In re Toga Manufacturing Ltd.,
 
 28 B.R. 165, 167 (Bankr.E.D.Mich.1983), the court did state that in order for § 304 to be applicable, "it must be shown that there is a foreign bankruptcy case concerning the debt- or and that the debtor has assets in the United States, more particularly, in the judicial district where it filed its ancillary proceeding.” The court provided support for this statement by citing to an earlier bankruptcy case,
 
 In re Stuppel,
 
 17 B.R. 413 (Bankr.S.D.Fla.1981). The court in
 
 In re Stuppel
 
 held that a petitioner under § 304 must allege,
 
 inter alia,
 
 the presence within the district of property involved in the foreign proceeding. We do not read either of these cases as addressing the jurisdictional issue before us in this case but rather the venue requirements in 28 U.S.C. § 1410. 28 U.S.C. § 1410(a) provides that a "case under section 304 of title 11 to enjoin the commencement or continuation of an action or proceeding in a State or Federal-court, or the enforcement of a judgment, may be commenced only in the district court for the district where the State or Federal court sits in which is pending the action or proceeding against which the injunction is sought.” The Reorganizers brought their Petition in the District of Columbia because that is where the breach of contract case against Kunnan was commenced; venue was therefore proper in the District of Columbia under 28 U.S.C. § 1410(a). However, 28 U.S.C. § 1410(b) provides that a "case under section 304 of title 11 to enjoin the enforcement of a lien against a property, or to require the turnover of property of an estate, may be commenced only in the district court for the district in which such property is found.” The two cases cited above appear to confuse the venue requirement of 28 U.S.C. § 1410(b) under which a petitioner must file in the district where the property is located with the jurisdictional question of whether assets in the United States are required for a § 304 action. (Here of course, 28 U.S.C. § 1410(b) is irrelevant because venue lies in the district in which Haarhuis filed, namely, the District of Columbia).
 

 [3]
 

 . Presumably, where there are no assets in the United States, a creditor with a judgment from a United States court will have to proceed to the foreign bankruptcy or reorganization proceeding and stand in line with other creditors to get his judgment enforced.
 

 [4]
 

 . Section 304(b)(3) has historically been used as the basis for,
 
 inter alia,
 
 ordering entities to submit to discovery by a foreign representative, appointing co-trustees with responsibility for a debtor’s assets in the United States, and authorizing a foreign representative to maintain foreign causes of action under the umbrella of the § 304 case.
 
 See
 
 3 Collier Bankruptcy Manual ¶ 304.07.
 

 [5]
 

 . A sixth factor, “(6) if appropriate, the provision of an opportunity for a fresh start for the individual that such foreign proceeding concerns,” is not applicable here.
 

 [6]
 

 . As one court has noted:
 

 [SJection 304 was intended to arm the bankruptcy courts with the maximum flexibility possible in handling ancillary cases in light of principles of international comity and respect for the laws and judgments of other nations. One of my colleagues in an oft-quoted passage has likened the court’s prerogative to the molding of appropriate relief "in near blank check fashion....”
 
 In re Culmer, 25
 
 B.R. 621, 624 (Bankr.S.D.N.Y.1982). As the
 
 Goerg
 
 Court
 
 [In re Goerg,
 
 844 F.2d 1562 (11th Cir.1988)] concluded, this articulated legislative intent warrants construction of the statute so as to further rather than stymie the Congressional desire.
 

 In re Brierley,
 
 145 B.R. at 160.
 

 [7]
 

 . Federal Rule of Civil Procedure 54(d)(1) provides that "costs other than attorneys’ fees shall be allowed as of course to the prevailing party unless the court otherwise directs.”
 
 See also Baez v. United States Dep't of Justice,
 
 684 F.2d 999, 1004 (D.C.Cir.1982) (in banc) (per curiam) (“[T]rial judges have rarely denied costs to a prevailing party whose conduct has not been vexatious when the losing party has been capable of paying such costs.”).