**In re MASTER HOME FURNITURE COMPANY LTD., Debtor in Foreign proceedings.**

**No. RS 01–10638 MJ.**

United States Bankruptcy Court, C.D. California.

April 24, 2001.

---

Gary Dyer, Riverside, CA, United States Trustee.

Franklin C. Adams, Best, Best & Krieger, LLP, Riverside, CA, for debtor.

## MEMORANDUM OF DECISION RE AMERICAN EXPRESS BANK LTD'S MOTION TO DISMISS SECTION 304 PETITION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)

MEREDITH A. JURY, Bankruptcy Judge.

On January 16, 2001 Jimmy Hsieh as foreign representative of Master Home Furniture Company, Ltd. ("MHF"), a Taiwanese corporation, filed an ancillary petition under 11 U.S.C. § 304.[1] In conjunction with this petition, MHF sought a preliminary injunction against American Express Bank, LTD, ("AMEX") seeking, among other things, to enjoin prosecution of a receivership action in the Superior Court of California. AMEX controverted the petition for ancillary relief, filing a motion to dismiss under Federal Rule of Civil Procedure § 12(b) or, in the alternative, to dismiss or abstain pursuant to 11 U.S.C. § 305.

---

1. Unless otherwise indicated, all references are to the Bankruptcy Code, found at 11 U.S.C. § 101, et seq.

After the hearing on March 9, 2001 this court granted AMEX's motion to dismiss, dismissing the case under F.R.C.P. 12(b) without leave to amend. This memorandum of decision constitutes the court's findings of fact and conclusions of law in support of the order dismissing the case.

## I.

### ISSUES PRESENTED FOR DECISION

AMEX's motion to dismiss raised the following issues for the court's decision:

1. Whether MHF is the subject of a foreign proceeding as that term is defined in § 101(23);

2. Whether Jimmy Hsieh, a member of the board of directors of MHF, is a foreign representative of MHF as that term is defined in § 101(24);

3. Whether the Civil Ruling issued by the Chang Hua District Court of Taiwan entitles MHF to some relief in this ancillary proceeding.[2]

## II.

### SUMMARY OF DECISION

This court finds that the pending application for reorganization filed in Taiwan by MHF does not qualify as a foreign proceeding as defined in the United States Bankruptcy Code. This court also finds that Jimmy Hsieh, a member of the board of directors of MHF, is not a foreign representative qualified to commence an ancillary proceeding in the United States Bankruptcy Court. Finally, the court finds that the issuance of the Civil Ruling in Taiwan does not by itself entitle MHF to relief in an ancillary proceeding in the United States.

---

**2.** Because this court has granted American Express' motion to dismiss under F.R.C.P. 12(b), the alternative relief, dismissal or abstention pursuant to § 305, is not addressed

## III.

### SUMMARY OF FACTS

The facts necessary to this decision are not in dispute. MHF is a corporation organized under the laws of Taiwan. Robert Hsieh is a principal shareholder of MHF. His wife, Lin Hsueh–Ping, is the chairperson of the board of directors, and his son, Jimmy Hsieh, is a member of the board of directors.

Due to financial problems in 1999, MHF and various banks entered into an Intercreditor Agreement, under the terms of which AMEX would act as a security agent for the banks party to the agreement, all of which had extended credit facilities to or guaranteed debt of MHF. At the same time, MHF and AMEX, in its capacity as security agent for the banks in the Intercreditor Agreement, entered into a Pledge of Shares Agreement. Under this agreement, MHF agreed to pledge its stock in Master Home USA, ("MHUSA"), a Delaware corporation owned 100% by MHF, as security for repayment to the banks of money due or to become due under the various credit facilities extended by the banks to MHF. The pledge agreement stated that MHUSA owned 95% of the currently issued and outstanding shares of Wickes Furniture Co., Inc. and 100% of the issued and outstanding shares of Master Design, Inc. ("MDI"), both American corporations.

In 2000 MHF defaulted under its various creditor agreements with the banks represented by AMEX. As a result, on December 12, 2000 AMEX filed a lawsuit in California Superior Court, County of San Bernardino, to foreclose on its collat-

---

by this decision. Similarly, MHF's request for a preliminary injunction is moot as a result of the dismissal of the ancillary proceeding.

eral, the stock of MHUSA. On December 14, 2000 David J. Pasternak was appointed as temporary receiver of MHUSA and took control of the company, including the equity interest in Wickes and MDI. The existing management of Wickes and MDI were retained by the receiver, with the exception of Hsieh family members.

On January 10, 2001, MHF filed a petition for reorganization under the Company Law of Taiwan, Article 282, et seq. On January 16, 2001 MHF filed its ancillary petition under § 304 and brought an emergency motion to stay the actions of the receiver, which was denied. On January 17,2001 the state court confirmed the receiver, leaving Pasternak in control of Wickes and MDI and allowing Pasternak to market Wickes.

When MHF filed it's application for reorganization in Taiwan, it filed a motion for an interim decree under Article 287 of the Company Law. On January 17, 2001 the Changhua Law District Court Taiwan issued its Civil Decree in response to the motion under Article 287. The certified translation of the ruling stated as follows:

1. "The following acts are prohibited during the three months following the date of delivery of this Decree:
 (1) The right of the creditors listed in the Exhibit [primarily the banks represented by AMEX—no trade creditors were listed] shall not be exercised against the Applicant; the obligations owed by the Applicant to the creditors listed in the Exhibit shall not be performed.
 (2) Any compulsory execution proceedings (including temporary attachment proceedings) or bankruptcy proceedings against the Applicant shall be suspended."

Based on this Civil Decree in Taiwan, MHF sought a preliminary injunction against AMEX in the United States Bankruptcy Court. AMEX countered with its motion to dismiss under Rule 12(b).

## IV.

### AN ANCILLARY PROCEEDING IS BASED UPON A FOREIGN PROCEEDING AND A FOREIGN REPRESENTATIVE

AMEX asserts that MHF's § 304 petition fails to state a claim upon which relief can be granted and therefore should be dismissed pursuant to F.R.C.P. 12(b)(6). Such dismissal may be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1988). AMEX contends that a petition for relief under § 304 cannot stand unless there is an appropriate foreign proceeding and the application is made by a recognized foreign representative. The language of the statute controls such petition:

§ 304 "(a) A case ancillary to a foreign proceeding is commenced by the filing with the bankruptcy court of a petition under this section by a foreign representative."

Foreign proceeding is defined at § 101(23):

"Foreign proceeding, whether judicial or administrative and whether or not under bankruptcy law, in a foreign country in which the debtor's domicile, residence, principal place of business, or principal assets were located at the commencement of such proceeding, for the purpose of liquidating an estate, adjusting debts by composition, extension, or discharge or effecting a reorganization."

A foreign representative is defined at § 101(24):

"Foreign representative means duly selected trustee, administrator, or other

representative of an estate in a foreign proceeding."

## A. *There Is No Foreign Proceeding In Taiwan*

 In determining whether there is a foreign proceeding, the court should consider "the amount of judicial involvement and supervision." *In re Bd. of Directors of Hopewell Int'l Ins., Ltd.*, 238 B.R. 25, 50 (Bankr.S.D.N.Y.1999). The proceeding in *Hopewell* was a scheme of arrangement under Bermuda Law which the court analogized to a pre-packaged chapter 11 plan. The scheme was under significant judicial involvement and the scheme administrators were the Board of Directors of *Hopewell*. *Id.* at 51. The Bankruptcy Court in *Hopewell* found that the scheme of arrangement under Bermuda Law qualified as a foreign proceeding because of the amount of judicial supervision and the opportunity for creditors to participate in the scheme.

The existence of the necessary foreign proceeding was also addressed in *In re Tam*, 170 B.R. 838 (Bankr.S.D.N.Y.1994), where the Bankruptcy Court found that the voluntary winding up of a Cayman Islands Corporation was not a foreign proceeding within the meaning of § 101(23). Although the liquidators appointed in the voluntary winding up procedure were fiduciaries who must act in the best interest of the creditor body as a whole, the court found that the lack of either judicial or administrative supervision failed the definitive test of the Code. The voluntary winding up was "conducted without any regulatory oversite and virtually no creditor participation." *Id.* at 843.

To determine whether a foreign proceeding exists as a result of MHF's application to reorganize in Taiwan, the court must analyze Taiwanese Company Law, based on the translated law presented to the court and the expert interpretation of that law by AMEX's qualified expert, Ching–Chieh Tsai. Article 282 of the Company Law states "Upon petition by any of the following persons in interest [Board of Directors, Long Term or Large Shareholders, or Creditors with significant claims] the court may by decree permit a company to reorganize ..." Article 283 states that a petition to reorganize shall be filed in writing by the applicant and specifies the necessary contents of such petition.

Once a petition for reorganization is received by the court, the court seeks comments from pertinent governmental agencies (Article 284) and appoints a disinterested person as an inspector to submit a report to the court regarding the company's business and financial condition, the possibilities of continued operation through reorganization, and the veracity of the facts set forth in the petition (Article 285). All parties agreed such governmental comments and inspector's report may take 6 to 9 months to complete. Only after the court has received the governmental agency's input and the report from the inspector will a reorganization be granted by the court.

In the interim, provisional relief may be granted by Article 287:

"Before granting by decree a permission for reorganization, the court may, upon petition by an interested party, or *ex officio*, authorize by decree any of the following measures to be taken:

1. The preservation of the company's property;

2. The limitation on the company in operating its business;

3. The limitations on the performance by the company of its obligations and the assertion of claims against the company;

4. The suspension of proceedings with respect to the bankruptcy and composition or compulsory execution of the company;

5. The prohibition against transferring the registered share certificates of the company; or

6. The investigation and establishment of the responsible person's liability for damage caused to the company, and the preservation of his property."

Only after permitting a reorganization by decree will the court appoint a reorganization supervisor to restructure the reorganization, under court supervision. (Article 289)

This review of the Taiwanese Company Law reflects that while the application for reorganization is pending, the court does not supervise or administer the operation of the company.

While the MHF application for reorganization was pending, it filed a motion for an interim decree under Article 287. MHF's interim application only asked for relief under paragraphs 3 and 4 of Article 287. Moreover, the evidence showed that the relief requested only pertained to a certain list of creditors attached to the application, those being the bank creditors. Trade creditors were not on the restricted list.

In accordance with the application, the Civil Decree issued by the Taiwanese District Court stated:

(1) The right of the creditors listed in the Exhibit [primarily the banks represented by AMEX—no trade creditors were listed] shall not be exercised against the Applicant; the obligations owed by the Applicant to the creditors listed in the Exhibit shall not be performed.

(2) Any compulsory execution proceedings (including temporary attachment proceedings) or bankruptcy proceedings against the Applicant shall be suspended.

In essence, the Civil Decree prohibited the bank creditors from seeking payment from MHF and prohibited MHF from paying bank creditors. The decree did not prevent MHF from paying its trade creditors while the reorganization application was pending.

Expert witness Tsai relied on a judgment by the Supreme Court of Taiwan in interpreting the scope of the restriction in the interim decree. That judgment stated (English translation):

"It is provided for in Subparagraph 3 of Paragraph 1 of Article 287 of the Company Law that pending a decree by a court on reorganization, the court may, on the motion of a concerned party or *ex officio*, issue an interim decree to restrict the exercise of creditors' rights against the company and to restrict the performance of obligations by the company. The purpose of issuing an interim decree to restrict the exercise of credit rights against the company and also to restrict the performance of obligations by the company in accordance with the provisions of Subparagraph 3 of Paragraph 1 of Article 287 of the Company Law is to maintain the current status of the company. Consequently, the matter restricted shall be interpreted to only be limited to actual payment, and such an actual payment shall also be limited to payment made outside of court proceedings. Creditors may still file a lawsuit demanding that repayment be made by the company." Judgment relating to Article 287 of the Company Law (English translation), Case No.: 86 NIEN CHUNG SU TI 153

This restriction on the rights of creditors was similarly interpreted by the Taiwanese Judicial Yuan as referenced in the testimony of expert Tsai:

Legal question: Pending a decree by court on reorganization, if an interim decree is issued by the Court which restricts the exercise of credit rights against the company and also restricts the performance of obligations by the company in accordance with the provisions of Subparagraph 3 of Paragraph 1 of Article 287 of the Company Law, how shall the Court handle a pending litigation relating to the said credit rights and obligation?

Opinion on Discussion:

Opinion A: Pending the decree by the Court on reorganization, when an interim decree has been issued by the Court which restricts the exercise of credit rights against the company and also restricts the performance of obligations by the company, either on the motion of a concerned party or *ex officio*, if a debtor files a lawsuit against the company demanding a repayment, such a lawsuit shall be regarded as lacking in requirements for protection of rights, and the lawsuit shall be dismissed. This answer applies when the said decree is issued during the process of a lawsuit.

Opinion B: The purpose of issuing an interim decree to restrict the exercise of credit rights against the company and also to restrict the performance of obligation in accordance with the provisions of Subparagraph 3 of Paragraph 1 of Article 287 of the Company Law is to maintain the current status of the company. The matter restricted shall be interpreted to only be limited to actual repayment. Since the purpose of a civil lawsuit is to ascertain private rights, and not to realize private rights. Consequently, the proceedings of a pending lawsuit shall still be allowed to continue, and a new lawsuit may still be filed.

Resolution: Opinion B is adopted. Opinion of the First Section of the Judicial Yuan after its research. Opinion B is adopted. Judicial Yuan (72) Ping Ming 1 Tzu Ti 0394, Issuing date June 20 1983.

Based on the undisputed interpretation of Taiwanese reorganization law, this court finds that the interim decree issued in Taiwan is not equivalent to the protection of the automatic stay in the United States. While the reorganization application is pending in Taiwan, MHF is not restricted in running its business, selling its assets, and paying any of its creditors except for the bank creditors listed on the interim decree application. Creditors are not restricted from filing lawsuits against MHF or taking other steps to protect their legal position. The creditors are only restricted from actually collecting through judicial execution on an unsecured judgment under the issued Civil Decree.

As cited in the law above, in order for a foreign proceeding to be pending, there must be judicial or administrative oversight of the business operation of the corporation. While an application for reorganization is pending in Taiwan, no such oversight exists. Therefore, this court finds that there is no foreign proceeding as defined by § 101(23).

## B. *Jimmy Hsieh is Not a Qualified Foreign Representative*

■ Section 304 states that a case ancillary to a foreign proceeding is commenced by the filing in the Bankruptcy Court of a

petition by a foreign representative. Foreign representative is defined at § 101(24) as a "duly selected trustee, administrator, or other representative of an estate in a foreign proceeding." MHF argues that Jimmy Hsieh, a member of the board of directors of MHF, qualifies as a foreign representative. Facts and law do not support this position.

Under Taiwanese Company Law, a representative of the estate is not appointed before the application for reorganization is approved.

"In permitting a reorganization by decree, the court shall appoint a person or a financial institution of professional knowledge and experience in operating the business as a company to act as a reorganization supervisor." Article 289

Expert witness Tsai stated that the standard practice in Taiwan is to appoint between three and five reorganization supervisors. The appointed persons could be representatives of the debtor corporation, independent attorneys, accountants, or even members of the creditor body, as the court sees fit. However, such person is not appointed until the reorganization is permitted. Article 289 also provides:

"The reorganization supervisor referred to in the preceding paragraph shall act under the supervision of the court and may be removed by the court at any time."

Article 290 provides for a reorganization manager who performs his duties under the supervision of the reorganization supervisor. This reorganization manager usurps the function of the shareholders and directors of a company as provided in Article 293:

"After notice of the decree for reorganization has been duly served on a company, the right to manage the company's business and to dispose of its properties shall be transferred to the reorganization manager(s) under the supervision of the reorganization supervisor, which transfer shall be reported to the court. Upon such transfer, the functions of the shareholders' meetings, directors and supervisors of the company shall cease to exist."

The one reported case involving a § 304 ancillary proceeding out of Taiwan, *Haarhuis v. Kunnan Enterprises, Ltd.*, 223 B.R. 252 (D.D.C.1998), *aff'd* at 177 F.3d 1007 (D.C.Cir.1999), was initiated by three Taiwanese citizens who were the court appointed reorganizers of Kunnan, which had been undergoing reorganization since February, 1996 in the Tai Chung District Court, Taiwan. The District Court and Circuit Court recognized the Kunnan proceeding as a reorganization under Taiwanese insolvency laws and accepted the court-appointed reorganizers as foreign representatives. Jimmy Hsieh is not a court-appointed reorganization supervisor or manager; his authority has been given only by the board of directors of the corporation, not yet in reorganization in Taiwan. He is not an appropriate foreign representative.

The United State Bankruptcy Code contemplates a fiduciary responsible for the estate in all instances. In a Chapter 7 proceeding, a trustee is appointed with fiduciary responsibilities for liquidating the estate (as defined in § 541) and distributing the assets in accordance with priority. In a Chapter 11 the debtor in possession assumes such fiduciary responsibilities (see, *In re Perez*, 30 F.3d 1209, 1213 (9th Cir.1994)). In a Chapter 13 the debtor has the same fiduciary responsibilities to the creditors of the estate. Taiwanese Company Law places the same responsibilities on the reorganization supervisor appointed under Article 289 after the reorganization is accepted. All acts taken by the reorganization supervisor are subject to court

supervision and approval. The reorganization supervisor may be removed by the court at any time.

None of the restrictions or constrictions on a fiduciary are borne by Jimmy Hsieh. He is under no fiduciary responsibilities to the creditors or the estate,[3] nor must he report his activities to the court for supervision or approval. This court finds that Hsieh does not qualify as a "duly selected trustee, administrator, or other representative of an estate in a foreign proceeding."

## V.

### THE UNITED STATES BANKRUPTCY COURTS ARE NOT REQUIRED TO GIVE COMITY TO THE TAIWANESE ACTION BY ALLOWING A 304 ANCILLARY PETITION

■ The United States Supreme Court defined comity in *Hilton v. Guyot*, 159 U.S. 113, 16 S.Ct. 139, 40 L.Ed. 95 (1895) as follows:

> [Comity is] neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other. But it is the recognition which one nation allows within its territory to the legislative, executive, or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protection of its laws.

*Id.* at 163–166, 16 S.Ct. 139.

The Ninth Circuit addressed comity in *In re Simon*, 153 F.3d 991 (9th Cir.1998) by stating "International comity in transnational insolvency proceedings must be considered in the context of bankruptcy theory." *Id.* at 998, The BAP considered comity in *In re Manning*, 236 B.R. 14 (9th

Cir. BAP 1999) where it considered a § 304(c) application for injunctive relief.

Under general principles of comity as well as the specific provisions of section 304, federal courts will recognize foreign bankruptcy proceedings provided that foreign laws comport with due process and fairly treat the claims of local creditors. *Victrix S.S. Co.*, 825 F.2d at 714. Deferring to a foreign bankruptcy case is appropriate when the foreign law is not 'repugnant to American laws and policies.' *In re Davis*, 191 B.R. 577, 587 (Bankr.S.D.N.Y.1996) (*citing Brierley* 145 B.R. at 166; *Gee*, 53 B.R. at 904).

*Manning*, 236 B.R. at 26.

The § 304 petition and the subsequent request for preliminary injunctive relief here request this court to grant comity and restrain the State Court receivership proceeding brought by AMEX. If this court did so, it would go far beyond the bounds of comity, because it would be granting more relief than is available in Taiwan at the present time. As stated above, MHF is not yet accepted into a reorganization proceeding in Taiwan. It is free to conduct its business as usual, sell its assets, make purchases outside the ordinary course of business, and pay all of its creditors except for the listed bank creditors. It has no fiduciary responsibilities to it creditors and no estate yet exists in Taiwan. On the other hand, if AMEX had a receivership proceeding pending in Taiwan, it would not be suspended by the interim decree. Only final execution on an unsecured judgment is disallowed in Taiwan. If this court granted the ancillary petition and restrained AMEX, it would be according MHF relief not available in its own country.

---

**3.** The court also finds that there is no estate for Jimmy Hsieh to represent. Under § 541, the commencement of a case under §§ 301, 302, or 303 of this title creates an estate. Since no foreign proceeding has commenced in Taiwan, there is no estate in Taiwan.

■ This court is required to give deference to a foreign bankruptcy case which is not repugnant to American laws. Giving such deference here would be repugnant. No fiduciary exists in Taiwan. No orderly distribution to creditors exists in Taiwan. No court supervision of the company's activities exists in Taiwan. Here, comity requires no recognition of the Taiwanese proceeding.

## VI

### *CONCLUSION*

Because the application of MHF for reorganization has not yet been accepted in Taiwan, this court finds no foreign proceeding as required by § 304. Jimmy Hsieh is not a fiduciary, has not been duly selected as a representative of a foreign bankruptcy estate, and therefore is not an appropriate foreign representative. Comity does not require this court to grant more relief than a court in Taiwan would grant. For all these reasons, the motion to dismiss the § 304 petition is granted under F.R.C.P. 12(b)(6).